## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| BRENDA F. HOUSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.  7:13-cv-00208-JEO |
| | ) | |
| CAROLYN  W.  COLVIN,  Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Plaintiff Brenda F. Houston brings this action, through counsel, pursuant to 42 U.S.C. § 405(g),[1] seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying Plaintiff's application for a period of disability and Disability Insurance Benefits ("DIB") and denying her application for Supplemental Security Income ("SSI").  (Doc.[2] 1).  The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013.  The cause now comes to be heard on Plaintiff's application for judicial review.  *See* 28 U.S.C. § 636(b), Fed. R. Civ. P. 72(b)(1).  The parties have consented to the jurisdiction of this court for disposition of the matter.  *See* 28 U.S.C. § 636(c), Fed. R.

---

[1] The judicial review provisions for DIB claims, 42 U.S.C. § 405(g), also applies to claims for SSI, *see* 42 U.S.C. § 1383(c)(3).

[2] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

C IV. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that

the Commissioner's decision is due to be affirmed.

# I.  <u>PROCEDURAL HISTORY</u>

Plaintiff filed an application for a period of disability and for DIB on January 12,

2010, and for SSI on January 8, 2010, both alleging disability beginning December 1,

2009.  (R. 156, 158).[3]  Her claims were denied initially.  (R. 95-96).  Thereafter, she

requested a hearing before an Administrative Law Judge ("ALJ"), which was held on

October 19, 2011.  (R. 53).  At the hearing, Plaintiff was represented by an attorney  (*Id*.)

Following the hearing, the ALJ issued a decision fining that Plaintiff was not disabled

under the meaning of the Social Security Act for the purposes of her claims.  (R. at 47-

48).  He also found that she had a residual functional capacity ("RFC") for light work in

that she could

> lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk
> approximately 6 hours in an 8-hour day; sit approximately 6 hours in an 8-
> hour day; no unprotected heights or dangerous or moving equipment; no
> ladder, ropes, or scaffolds; no concentrated exposure to extreme cold, heat
> dust, gases, odors, chemicals, etc.; and occasionally balance, stoop, kneel,
> crouch, crawl, and climb ramps and stairs.

(R. 42).  Plaintiff appealed the decision to the Appeals Council and her request for review

was denied on December 12, 2012.  (R. 1).  Therefore, the ALJ's decision represents the

final decision of the Commissioner.  (*Id*.)  Plaintiff thereafter timely filed this action for

---

[3]Citations to (R. ___) are to the page of the administrative record, which is encompassed within Docs. 6-1 to
6-11.

judicial review under 42 U.S.C. § 405(g), asserting that the findings of the ALJ are not based upon substantial evidence and the Appeals Council erroneously denied Plaintiff's request for review.  (Doc. 1 at 2).

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied."  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)).  "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept

as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).  Conclusions of law made by the Commissioner are reviewed de novo.  *Cornelius,* 936 F.2d at 1145.  "No ... presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  <u>DISCUSSION</u>

**A.     Background**

Plaintiff is a fifty-six year old with a history of coronary artery disease, hypertension, and obesity.  She worked until December 1, 2009, the onset of her medical condition.  (R. 180).  Prior to that she had been working regularly as a cook since about 1996.  (R. 181).  In December 2009, she underwent bypass surgery following complaints of chest pain.  (R.185).

Plaintiff has not engaged in substantial gainful activity since December 1, 2009. (R. 41).  She meets the insured status requirements of the Social Security Act through December 31, 2013.  (*Id.*)

**B.     The Five-Step Evaluation Process**

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability, DIB, and/or SSI.  *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986).  "[A]n individual shall be considered to be

disabled for purposes of [determining eligibility for DIB and SSI benefits] if [she] is

unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 1382c(a)(3)(C)(1); *see also* 42 U.S.C. § 416(i)(1); 42 U.S.C. §

423(d)(1)(A).  The specific steps in the evaluation process are discussed below.

### 1.      Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in

"substantial gainful activity."  *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).  The

regulations define "substantial gainful activity" as "work activity that is both substantial

and gainful."[4]  20 C.F.R. § 404.1572; 20 C.F.R. § 416.972.  If the claimant is working

and that work is substantial gainful activity, the Commissioner will find that the claimant

is not disabled, regardless of the claimant's medical condition or his age, education, and

work experience.  20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b).  "Under the first

---

[4]The regulations state:

(a) *Substantial work activity*.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*.  Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572; 20 C.F.R. § 416.972.

step, the claimant has the burden to show that []he is not currently engaged in substantial

gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 F. App'x 862,

863 (11th Cir. 2012).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since

December 1, 2009, the alleged onset date.  (R. 41).  This determination is not disputed by

the parties.

### 2.    Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner

must next determine whether the claimant suffers from a severe impairment or

combination of impairments that significantly limits the claimant's physical or mental

ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. §

416.920(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable

by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §

423(d)(3); 42 U.S.C. § 1382c(a)(3)(D).  The regulations provide: "[I]f you do not have

any impairment or combination of impairments which significantly limits your physical or

mental ability to do basic work activities, we will find that you do not have a severe

impairment and are, therefore, not disabled.  We will not consider your age, education,

and work experience."  20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).  "An

impairment can be considered as not severe only if it is a slight abnormality which has

such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a); 20 C.F.R. § 416.921(a). A complainant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523; 20 C.F.R. § 416.923. A claimant has the burden to show that he has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that Plaintiff had certain severe physical impairments as follows: "status post quadruple coronary artery bypass graft and hypertension (20 CFR 404.1520(c) and 416.920(c))." (R. 41).

### 3.    The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and whether it is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §

404.1520(d); 20 C.F.R. § 416.920(d).  The claimant has the burden of proving that his

impairment meets or equals the criteria contained in one of the Listings.  *Reynolds-*

*Buckley*, 457 F. App'x at 863.  Here, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled a Listing.  (R.

42).  Specifically, he stated that to demonstrate the necessary impairment or combination

of impairments, Plaintiff

> would have to have evidence supporting a diagnosis of myocardial ischemia
> while on a regime of prescribed treatment with (A) a sign or symptom-
> limited exercise tolerance test at a workload of less than 5 METs, or (B)
> three separate ischemic episodes each requiring revascularization within a
> continuous 12 month period, or (C) coronary artery disease with
> angiographic evidence of significant stenosis of the coronary arteries and
> resulting in very serious limitations in the ability to independently initiate,
> sustain, or complete activities of daily living.

(*Id.*)  Thereafter, he concluded that there was "no evidence in the record that [Plaintiff's]

coronary artery disease status post coronary artery bypass graft meets any of the

requirements of listing 4.04."  (*Id.*)

The ALJ similarly found that Plaintiff's hypertension, "either alone or in

combination, fails to meet or medically equal [the Listings]."  (*Id.*)  He stated that the

record failed to demonstrate

> systolic or diastolic failure (4.02A), persistent symptoms of heart failure
> limiting the ability to independently initiate, sustain or complete activities
> of daily living, three or more separate episodes of acute congestive heart
> failure within a 12-month period, or an inability to perform on an exercise
> tolerance test (4.02B).  The record further fails to demonstrate ischemic
> heart disease with sign- or symptom-limited exercise tolerance test (4.04A),
> three separate ischemic episodes each requiring revascularization (4.04B),o

8

or coronary artery disease demonstrated by angiography (4.04C).  The record likewise fails to demonstrate evidence of end-organ damage. Therefore [Plaintiff's] hypertension fails to meet or medically equal either section 4.02 or 4.04 of [the Listings].

(R. 42).

### 4.    Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that his impairment prevents him from performing his past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); 20 C.F. R. § 416.920(a)(4)(iv), (f).  At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work."  20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.960(b).  "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it."  20 C.F.R. § 404.1560(b)(1); 20 C.F.R. § 416.960(b)(1).  If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled.  20 C.F.R. § 404.1560(e); 20 C.F.R. § 416.920(e).  The claimant bears the burden of establishing that the impairment prevents him from performing past work.  *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk and sit approximately 6 hours in a an 8-hour day; and could not work in unprotected heights or with dangerous or moving equipment, on ladders, ropes or scaffolds or with concentrated exposure to extreme cold, heat, dust

gases, odors, chemicals, etc.  Finally, he found she could occasionally perform work requiring her to balance, stoop, kneel, crouch and crawl, and climb ramps and stairs.  (R. 42).  In arriving at this determination, he found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]."  (R. 43).

Also, the ALJ found that Plaintiff was unable to perform her past relevant work because of the required exertion level.  (R. 46).  This determination was premised on the opinion of the vocational expert ("VE").

### 5.    Other Work in the National Economy

If the claimant establishes that he is unable to perform his past relevant work, the Commissioner must show that the claimant – in light of her RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy.  *Reynolds-Buckley*, 457 F. App'x at 863; *see also* 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v).  The regulations provide:

> If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, ... , we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience.  Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); 20 C.F. R. § 416.960(c)(1).  If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled.  20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g).

Because the ALJ found Plaintiff could not perform a full range of light work because of her limitations, he consulted a VE to determine whether any jobs exist in the national economy that Plaintiff, considering her RFC and her age, education and work experience, could perform.  The VE testified that an individual with Plaintiff's limitations and vocational factors as found by the ALJ could perform the jobs of cashier, ticket seller, and gate guard, which are jobs that exist in significant numbers in Alabama and in the national economy.  (R. 47, 75).  When questioned by Plaintiff's attorney, the VE acknowledged that if a person of Plaintiff's age, education, and work experience was limited to standing and walking for only two hours a day, that person would be put at the sedentary level.  (R. 76).

**B.     Plaintiff's Claims**

**1.     Challenge to the Finding that Plaintiff Was Capable of Performing Work at the "Light Level" of Exertion**

In this court, Plaintiff claims that the ALJ (1) was required to seek an medical source statement ("MSS") or other opinion from an examining or reviewing medical source; (2) improperly relied on the "Physical Residual Functional Capacity Assessment" prepared by Gwendolyn McCurdy, a Single Decision Maker ("SDM"); and, (3) the

determination that Plaintiff could perform at the light work level is not supported by substantial evidence. (Doc. 10 ("Pl. Brief") at 3, 6-7). Each will be addressed below.

At the outset, the court notes that McCurdy is a SDM who authored Plaintiff's June 17, 2010 "Physical Residual Functional Capacity Assessment." (R. 97-104). "SDMs are part of a test program of the Social Security Administration for making initial disability determinations by non-medical experts. 20 C.F.R. § 404.906(a)." *Chaverst v. Astrue*, 2012 W: 5379063,*8 (N.D. Ala. 2012). *See also* 71 Fed. Reg. 45890-01, 2006 WL 2283653 (August 10, 2006) (under the process, a single decisionmaker "may make the initial disability determination in most cases without requiring the signature of a medical consultant...."). SDMs are thus permitted under the law.

### a.    Need for an MMS

Plaintiff initially argues that the ALJ erred in failing to obtain an MSS before arriving at his RFC, this court disagrees. Plaintiff asserts the "record is devoid of any" physician opinion regarding her physical limitations, "making it unclear how the ALJ determined [Plaintiff] would be capable of performing work at the light level of exertion." (*Id*. at 6). Plaintiff has cited no authority requiring that the ALJ obtain an MSS concerning her physical limitations. The undersigned can find no instance where the Eleventh Circuit has addressed this specific issue. However, in *Green v. Social Security Administration*, 223 F. App'x 915 (11th Cir. 2007), the court rejected the plaintiff's argument that Eleventh Circuit precedent requires an RFC assessment from a

12

physician, stating that while "a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ.  20 C.F.R §§ 404.1513, 404.1527, 404.1545."  *Green*, 223 F. App'x at 923.

Similarly, United States District Judge Virginia Emerson Hopkins has held that a treating physician's MSS is not necessary in every case.  *Rose v. Astrue*, 1:11-cv-01186-VEH, Doc. 15 at 6-7 (N.D. Ala. December 20, 2011).  *See also Langely v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011) ("Binding precedent in this Circuit does not require an RFC from a physician and this court declines to adopt the First Circuit Rule as propounded by the plaintiff or other district courts.  The single decision maker at the State agency level was not required to have a medical consultant assess the plaintiff's physical RFC.").  Because, as will be discussed below, the decision of the ALJ is supported by substantial evidence, a remand to the Commissioner on this basis is not warranted.[5]

### b.    Improper Reliance on the RFC Done by McCurdy

Plaintiff next argues that it appears that the ALJ improperly relied on the "Physical Residual Functional Capacity Assessment" prepared by McCurdy, the SDM.  (Pl. Brief at 6-7).  In support of this contention, Plaintiff argues that the only physical RFC assessment on file is from DDS (disability determination services) and was completed by McCurdy.

---

[5]Plaintiff asserts in her brief that "[a] consultative examination, by regulation, includes an assessment of a claimant's functioning.  See 20 C.F.R. §§ 404.1219n(c)(6) & 416.919n(c)(6)."  While that is correct, the regulation also provides that "the absence of such a statement in a consultative examination report will not make the report incomplete."  *Id*.

(*Id.*)  Plaintiff also argues that the ALJ failed to indicate what weight he gave to McCurdy's assessment and that he "gave 'significant' weight to the *findings* of Dr. Meleth, the examining doctor as well as the *findings* of [Plaintiff's] treating physicians ..., but neither Dr. Meleth nor Plaintiff's treating physicians offered any opinion regarding her limitations or capability to sustain work activities."  (*Id.* (italics added)).

Plaintiff's argument that the ALJ improperly relied on the RFC of McCurdy is conclusory and not supported by the record.  Nowhere in the decision does the ALJ rely upon or reference McCurdy's initial determination.  Plaintiff asserts that because the ALJ's ultimate RFC finding was the "same" as McCurdy's – "light level work with not concentrated exposure to extreme cold, heat dust, gases, odors, chemicals, etc. and occasional balancing, stooping, kneeling, crouching, crawling, and climbing" – there is a "question of how heavily the ALJ relied upon [her] assessment in making his [RFC] finding."  (Pl. Brief at 7).

The ALJ's RFC finding is not the same as McCurdy's.  The ALJ found that Plaintiff was not limited in her ability to push/pull in her bilateral upper and lower extremities whereas McCurdy found she was so limited.  (Compare R. 42 (Finding 5) with R. 98).  Additionally, while McCurdy determined Plaintiff was limited to occasional reaching and handling the ALJ made no reference to such.  (Compare R. 42 to R. 100). To the extent there is similarity in McCurdy's report and the ALJ's finding, that does not

14

warrant the conclusion proffered by Plaintiff.  In sum, the ALJ found that Plaintiff was less limited than McCurdy did.

### c. Absence of Substantial Evidence

Plaintiff lastly argues concerning the first claim that the determination that Plaintiff could perform at the light work level is not supported by substantial evidence. (Pl. Brief at 7).  In support of this contention, Plaintiff states that the ALJ "seemingly relied on the opinion of a single decision-maker and failed to point to any other opinions from a physician that would support his RFC...."  (*Id.*)

The ALJ's finding that Plaintiff can perform a limited range of light work is supported by the record.  Plaintiff was admitted to the hospital on December 14, 2009, after she presented in the emergency room with chest pain and shortness of breath.  An angiograph showed multiple large vessel coronary artery disease with heavily calcified and tortuous coronary arteries.  Accordingly, two days later, Dr. John Ferguson performed a quadruple coronary artery bypass graft.  She did well after the surgery and was released from the hospital on December 21, 2009, and had no complications.  (R. 43, 259-321).

Plaintiff had a follow-up visit with Dr. Steve Lovelady on January 4, 2010.  Her blood pressure was 180/80 and her surgical incision was healing well.  (R. 329-30).  She had regular visits with Dr. Lovelady following her initial follow-up.  She did well with Dr. Lovelady noting in March 2010 that her heart examination was normal.  Her blood pressure ranged from 144/86 (3/19/10) to 180/100 (2/3/10).  (R. 323, 325, 327, 329).  She

also saw Dr. Anand Pandey with Alabama Heart Care after her surgery.  He performed an echocardiogram in June 2010.  It showed that Plaintiff had mild to moderate mitral regurgitation, and an ejection fraction of greater than 55%, normal ventricle size and no pericardial effusion.  (R. 355-58).  He also noted and informed Dr. Lovelady that Plaintiff had not been compliant with her diet and exercise and that her blood pressures were high. He further increased her Lisinopril and added Chlorthalidone to her medication regimen. (R. 348).

Dr. Raveendran Meleth performed a medical examination of Plaintiff on June 5, 2010.  (R. 341-44).  Her chief complaint was her "heart."  (R. 341).  Plaintiff indicated in the examination that she had some pain in her leg from the surgical scar, she was tired at times, and short of breath when she walked.  Her blood pressure that day was very high at 227/99.  Dr. Meleth noted that her hypertension was poorly controlled.  He also noted that she had a "steady gait, she got up and walked independently, and she could stand on her toes, tandem walk, and squat up to 70 degrees."  (R. 44, 342).  Plaintiff also "had a full range of motion of her extremities, negative straight leg raises, and normal motor strength, muscle bulk and tone."  (R. 44, 342-43).  She did not need any assistive devices. (R. 342).  Meleth further diagnosed Plaintiff with "a history of coronary artery bypass graft and hypertension, poorly controlled, and he advised [her] to seek treatment for the hypertension."  (*Id*.)

The following month, on July 6, 2010, Plaintiff was seen by Dr. Pandey.  She was doing dramatically better and her blood pressure was normal (120/66).  (R. 346).  Plaintiff continued to experience vacillation regarding her blood pressure during the next six or seven months, including a high of 190/94 on February 2011.  (R. 44, 373-75, 380).  She also went to the Whatley Health Services beginning July 6, 2011, to control her blood pressure.  In her July 27, 2011 visit, Plaintiff complained of shortness of breath and dizziness.  She also reported that the incision scar on her leg was still tender.  Medication was prescribed for her hypertension.  (R. 374-75).  The ALJ noted these medical changes in his decision.  (R. 44).

It is clear that the ALJ properly considered and credited the objective, direct clinical findings of Plaintiff's treating physicians and Dr. Meleth as the CE.  (R. 45).  In doing so, he concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [he further concluded Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the RFC]."  (R. 43).  In support of this conclusion, the ALJ states:

> ....  There is no evidence to support her testimony that she was experiencing shortness of breath three to ten times a day.  While the claimant did report swelling and pain in her left leg, she maintained a normal range of motion and muscle strength in that leg.  The claimant reported having days where it felt as if pins were sticking in her chest, yet her medical records do not show that she made any complaints of chest pain after her surgery.  In addition, physical examinations of the claimant following her surgery were essentially normal.  The biggest issue the claimant appears to have is

17

> uncontrolled blood pressure.  However, a review of her pharmacy records
> indicates that she was probably not compliant with taking her blood
> pressure medications....  The claimant's Lisinopril dosage was increased in
> October of 2010, as her blood pressure was 184/104....  That was a time
> when she was not taking her medications according to her pharmacy
> records....  She seemed to remain compliant from June of 2011 through
> October of 2011.

(R. 45).  Plaintiff has offered nothing other than her conclusory challenges to dispute this

contention.  (Pl. Brief at 6-7).  As noted by the ALJ, nothing in the record precludes

Plaintiff from performing at the level and with the limitations found.  (R. 45-46).

Accordingly, the court finds that the determination of the ALJ is supported by substantial

evidence.

To the extent that Plaintiff asserts that no consideration was given to her leg pain

limiting her ability to work (Pl. Brief at 6), the court disagrees.  The ALJ found:

> Notwithstanding her allegations of pain, discomfort and physical
> limitations, treatment records and examinations do not provide evidence
> that would reasonably support a finding that the claimant is as physically
> limited as alleged.  The claimant may reasonably experience periodic
> episodes of pain, discomfort, other symptoms and some physical
> limitations; however, the records do not support a finding that her ability to
> exert herself physically is seriously reduced such that she could not engage
> in work activity.  Her self-reported physical limitations are not consistent
> with the medical evidence and she simply alleges a greater degree of
> debilitation than what objective evidence can support.  Therefore the
> undersigned finds that the claimant's statement regarding her pain and
> limitations are not fully credible and that her impairments are not disabling.

(R. 45).  Plaintiff's citation to her reports of leg pain due to the incision, coughing, having

to sleep on two pillows at night, and medical personnel observations of left leg tenderness

and discomfort (see Pl. Brief at 6), are not sufficient to overcome the fact that substantial evidence supports the determination of the ALJ.

Again, the ALJ properly credited the direct observations, examinations, and assessments of Dr. Meleth and the treating physicians.  They had the opportunity to see Plaintiff, review her entire medical history, and assess her then current condition.  Their findings were "internally consistent as well as consistent with the evidence as a whole" at the time of the decision.  (R. 45).  Accordingly, the ALJ concluded they were entitled to significant weight.  (R. 45-46).  The undersigned agrees.  This aspect of Plaintiff's challenge is without merit.

### 2.      Failure to consider obesity as a "Severe" Impairment

Plaintiff also asserts that the ALJ failed "to even consider [at step two] whether [Plaintiff's] obesity was a severe impairment."  (Pl. Brief at 7).  She also argues that the ALJ failed to consider and account for the effects and limitations caused by her obesity.  If he had, Plaintiff argues, he "likely would have imposed further limitations to account for [her] obesity."  (*Id*. at 9).  In support of these arguments, Plaintiff states that the evidence establishes she was obese due to the fact that she was 5'2" with a weight of 187.8 pounds and a BMI of 34.2.  (*Id*.)  Finally, she cites to Social Security Ruling 02-1p which requires that obesity be considered because it can be a "severe" impairment or it can cause further degradation of a claimant's physical capacity, especially in the presence of certain other impairments.  (Pl. Brief at 8).

19

Plaintiff bears the initial burden of demonstrating that her impairments are severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (the claimant has "the burden at ... step two that he has a medically severe impairment or combination of impairment"). The ALJ "is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.' " *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (citing *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)). This is particularly so where the claimant is represented by counsel. The ALJ is not subject to a heightened duty to discover all of the facts relevant to a claimant's disability claim. *Id*.

In this case, Plaintiff's applications for DIB or SSI did not list obesity as an impairment. (R. 156-61). Her "Field Office" and "Adult" disability reports did not list obesity as an impairment. (R. 176-87). Her "Adult Disability Report" only listed "Heart disease; bypass surgery in 12/2009" as limiting conditions. (R. 180). Her chief complaint to Dr. Meleth was her "heart." (R. 341). Obesity was not mentioned. At no point was plaintiff diagnosed as being obese. Obesity was not mentioned during her hearing before the ALJ, where she was represented by counsel. (R. 53-78). It was first mentioned in this appeal.

As just noted, Plaintiff has the responsibility to present evidence in support of her claim of an impairment. She has not satisfied this requirement, particularly as the substantial evidence only supports the severe impairments identified by the ALJ. Plaintiff

20

relies on a notation in a single progress note dated July 27, 2011, to support her claim that obesity was a severe impairment and that "the ALJ failed to even consider whether obesity" was an impairment or basis for additional limitations. (Pl. Brief at 7).

Plaintiff's medical records clearly demonstrate her physical condition. In December 2009, she weighed 128 pounds.[6] (R. 251). This results in a Body Mass Index ("BMI")[7] of 23.4, which is in the normal range.[8] (R. 251). In January 2010, she weighed 143 pounds. (R. 256, 337). In February 2010, she weighed only 142 pounds. (R. 327). By March 2010, she was up to 152 pounds. (R. 325, 336). The BMIs for those readings are 26.2, 26.0, and 27.8, respectively. All of which place Plaintiff in the overweight category.

By June 5, 2010, when Dr. Meleth recorded her height and weight, the latter being 165 pounds, Plaintiff crossed into the obesity category, but only by 0.2%. (R. 342). However, Dr. Meleth did not flag this event in any way and Plaintiff's other findings were not noteworthy, except that Meleth noted that she had only moderate exercise tolerance and her hypertension was poorly controlled. (R. 341-44). In July 2010, she weighed 166 pounds. (R. 346). This resulted in a BMI of 30.4, barely in the obese

---

[6]The court converted the weight that was listed in kilograms (58) to pounds for ease of comparison.

[7]*See* http://www.nhlbi.nih.gov./guidelines/obesity/BMI/bmicalc.htm

[8]The BMI categories are: Underweight = <18.5; Normal weight = 18.5-24.9; Overweight = 25-29.9; and, Obesity = BMI of 30 or greater. *See* http://www.nhlbi.nih.gov./guidelines/obesity/BMI/bmicalc.htm.

category.  However, her other clinical findings were normal, she identified as doing much better, and her blood pressure was under control.  (*Id*.)

In November 2010, Plaintiff weighed 187 and her blood pressure was elevated. (R. 362).  Her BMI was 34.2, once again in the obese category.  No other physical assessments were remarkable at that time.  (R. 362-63).

On September 22, 2011, Plaintiff weighed in at 192 pounds, which is her highest recorded value.  This results in a BMI of 35.1, well into the obese category.  (R. 380).  At the same time, her blood pressure was elevated, but her other physical findings were normal.[9]

An ALJ is required to consider all of Plaintiff's impairments when determining her residual functional capacity.  20 C.F.R. § 404.1545(a), (e). *See also Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986) ("ALJ must consider not only the disabling effect of each of the appellant's ailments individually, but also the combined effect of all of the appellant's impairments.").  When a claimant has multiple impairments, the impairments that are not severe must also be considered when determining her residual functional capacity.  20 C.F.R. § 404.1545(a)(2).  Stated simply, the ALJ must evaluate Plaintiff as a whole person.

 In addition, "it is the duty of the ... [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the

---

[9]The examiner did note that she still had discomfort in the area of her incision from the bypass surgery.  (R. 380).

22

combined impairments cause the claimant to be disabled."  *Bowen v. Heckler*, 748 F.2d

629, 634 (11th Cir. 1984). However, the Eleventh Circuit has also held that the statement

by the ALJ that she considered the impairments in combination is sufficient to show that

the ALJ considered the combined effect of Appellant's impairments.  *See Jones v. Dep't*

*of Health & Human Svcs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (noting that the

statement that the claimant does not have "an impairment or combination of impairments

listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4"

indicated that the ALJ considered the combined effect of appellant's impairments); *see*

*also Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (holding that an ALJ's

statement that the claimant "did not have an impairment or combination of impairments

listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 ...

constitute [d] evidence that [the ALJ] considered the combined effects of [the claimant's]

impairments") (emphasis in original).

    While the ALJ in this case did not specifically reference "obesity" in his decision,

he did note at the outset of the decision that "disability" includes an evaluation of the

combination of Plaintiff's impairments.  (R. 39).  He also noted the importance of

considering the combination of impairments when determining severity and the effect on

an individual's ability to work.  (R. 40).[10]  He also stated in his findings that Plaintiff

---

[10]He stated:

    At step two, the undersigned must determine whether the claimant has a medically determinable
    impairment that is "sever" or a combination of impairments that is "severe" ....  An impairment or
    combination of impairments is "severe" within the meaning of the regulations if it significantly

"does not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1426, 416.920(d), 416.925 and

416.926)."  (R. 42).  Accordingly, the undersigned finds that the ALJ did give adequate

consideration to the entirety of Plaintiff's condition and the medical evidence, including

her weight.

Although the record does demonstrate that at times Plaintiff was obese, that alone

is not sufficient to support her claim of an impairment.  "[T]he severity of a medically

ascertained disability must be measured in terms of its effect upon ability to work, and not

simply in terms of deviation from purely medical standards of bodily perfection or

normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *see also Moore v.

Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) ("[T]he mere existence of [ ]

impairment [ ] does not reveal the extent to which [it] limit[s] her ability to work or

undermine the ALJ's determination in that regard."); *Wind v. Harnhart*, 133 F. App'x

684, 690-91(11t Cir. 2005) (finding that the record contained no evidence that obesity

affected er ability to perform medium work).  In other words, an abnormality that does

---

limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work....  If the claimant doe not have a severe medically determinable impairment or combination of impairments, she is not disabled.  If the claimant has a severe impairment or combination of impairments the analysis proceeds to the third step.

(R. 40).

24

not cause an inability to work under the regulations will not support a finding of disability.

In this case, Plaintiff has failed to present evidence that she was impaired as a consequence of her obesity. While her medical records do demonstrate a period of obesity, there was no showing whatsoever that such a condition limited her ability to work. Plaintiff points to no evidence in this regard in her brief.

Plaintiff next argues that the ALJ should have ordered another consultative examination ("CE") due to her obesity. (Pl. Brief at 9). The ALJ has a duty to develop the record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (l1th Cir. 1999). "However, an ALJ has no duty to order a consultative evaluation where a sufficient record exists to make a determination and no previous treating or consultative physician has recommended an additional evaluation." *Bentley v. Astrue*, 2012 WL 4479273, *2 (N.D. Ala. September 25, 2012) (citing *Wilson*, 179 F.3d at 1278 and *Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir. 2007)). Similarly, a consultative examination "may" be obtained "where the evidence as a whole is insufficient to support a determination or decision on [a] claim." 20 C.F.R. §§ 404.1519a(b); 416.919a(b); *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) ("The regulations 'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources"). Finally, in *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988), the court stated that an ALJ "is

25

not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the administrative law judge to render a decision." *Id.* (quoting *Ford v. Sec. of Health & Servs.*, 659 F.2d 66, 69 (5th Cir Unit B 1981)).

      The record as discussed above is sufficient to support the ALJ's decision regarding Plaintiff, including her obesity.  Dr. Meleth, as well as the other medical health providers, documented her weight and other conditions and did not diagnose her as obese or limited by her weight.  Accordingly, the ALJ was not required under the circumstances to seek an additional consultative evidence.

## IV. <u>CONCLUSION</u>

      For the reasons set forth above, the undersigned fins that the decision of the Commissioner is due to be **AFFIRMED**.  An appropriate order will be entered separately.

      **DONE**, this the 14th day of February, 2014.

*John E. Ott*
_____
**JOHN E. OTT**
Chief United States Magistrate Judge

26